### WILSON v. BRAY.

1. FRAUD—SALES—DECEIT—TRIAL—CHARGE.
   Plaintiff and appellant, in an action for fraud and deceit employed to induce plaintiff to become the joint purchaser with others of a stallion, was not prejudiced by the failure of the trial court to instruct the jury what representations, if made, were important and controlling, or to charge them that one material representation, if made and relied upon, might be sufficient to warrant a verdict for plaintiff, whose claim as to the falsity of the statements and the making of fraudulent representations the court assumed to have been proved, not submitting either issue to the jury.

2. SAME—EVIDENCE—VALUE.
   Evidence that the animal had, subsequently to the time of the transfer, shown his quality to be as represented, was admissible in connection with testimony tending to show that only by such experience and trial could his value be shown.

Error to Ingham; Collingwood, J. Submitted April 10, 1912. (Docket No. 107.) Decided October 1, 1912.

Case by William O. Wilson against Mahlon A. Bray for fraud and deceit. Judgment for defendant. Plaintiff brings error. Affirmed.

*Gardner & Hood,* for appellant.

*S. L. Kilbourne,* for appellee.

OSTRANDER, J. An association was formed for the purpose of buying and exploiting a Percheron stallion, three years old; each member of the association acquiring a one-twelfth interest therein and in the horse. Plaintiff and defendant were members of the association. The purchase price of the horse was $2,400, and notes were given for this amount, executed by the members individually, later sued upon, and the judgment recovered paid. The horse was bought in March, 1903, and this action was begun in August, 1908, and tried in December 1910, resulting in a verdict and judgment for defendant. It is an action for damages for fraud and deceit, alleged to have been practiced by defendant in inducing plaintiff to become a member of the said association and one of the purchasers of the horse. The horse was sold to the association with a guaranty that he was a sure foal-getter and, with proper care and handling, a producer of good stock. It was agreed by the vendor that if the horse was not as represented he would return the notes given for his purchase price, or replace him with another horse of the same breed. In joining the said association and becoming bound for the purchase price of the horse, plaintiff claims to have been wholly influenced by, and to have relied upon, certain representations made by defendant. These representations were that the stallion was a valuable animal for breeding purposes, a sure foal-getter, and well worth $2,400, and that a share in him and in the enterprise was a good investment; that he (defendant) was

purchasing a one-twelfth interest in the horse, would sign the notes and be liable thereon as the other signers were. It is alleged that defendant, at the time he made the representations, knew that the horse was not worth to exceed $300, was not a good breeder or a sure foal-getter, but, having been employed and paid by the vendor to make the representations and to accomplish the intended deceit, he falsely appeared to be himself one of the purchasers of the horse, and to pay one-twelfth of the purchase price. The sum he paid, viz., $200, had theretofore been paid to him by the vendor, with an understanding that he should be no further liable.

Defendant denied the making of any of the alleged representations. He admits having given his opinion, and insists, and produced testimony to prove, that his opinion was sound. That is to say, he contended at the trial that the horse was a good horse and a sure foal-getter, and that, with proper management, the investment would have been profitable to the purchasers. He testified that he stated to plaintiff that he was employed by the owner and vendor of the horse to aid in disposing of him.

Usually, in a case of this character, it is the province of the jury to determine, *first*, whether the alleged representations were made, and, if made, then, *second*, whether they were false or true, and, if false, then, *third*, whether they were calculated to and did in fact influence the plaintiff to his injury. Curiously enough, what defendant said and the truth of whatever he said about the horse and the venture do not appear to have been questions submitted to the jury. The initial questions whether defendant made any material false statement about the horse or the venture are not suggested in the instructions to the jury. The nearest approach to it is in the following language:

"In this case, to entitle plaintiff to a verdict, you must not only believe from the evidence that the false and fraudulent representations were made, but also that they were

made under circumstances calculated to deceive a person acting with reasonable prudence and caution."

On the other hand, the jury was told—

" That in forming a company or corporation every subscriber has a direct interest in the subscriptions, because all are contributing to a common object. The fact that one person binds himself to place a certain sum of money in the enterprise, taking the ordinary risks incidental to such a business venture, is an inducement to others to venture in a like manner. Any secret agreement between the company, or those organizing the company, and a subscriber, which changes the condition of his subscription is a fraud upon the other subscribers. If Mr. Bray entered into a secret agreement with Mr. Comstock which would change the terms of Bray's subscription, and then Bray, without disclosing this secret agreement, induced Wilson to become a subscriber, and Wilson, relying on Bray being a bona fide subscriber, did actually become a subscriber, then Bray is liable for any loss or damage which Wilson may have sustained, and you must find him guilty."

The errors assigned by plaintiff are based upon exceptions to rulings upon the admission of testimony, upon portions of the charge given, and the refusal to instruct the jury as requested. The brief for appellant contains a critical examination of portions of the charge which are singled out; some of the objections being generally well founded. But it must be admitted that the charge as a whole was favorable to the plaintiff. The language employed by the court assumes, in substance and effect, that the representations claimed to have been made were made, and were not true. The points to which the attention of the jury was directed were (1) whether they were of such a character and made under such circumstances that a reasonably prudent person should have relied upon them, and (2), as to the alleged secret agreement, whether plaintiff, relying upon the terms of Bray's subscription and his apparent equal interest and responsibility, was induced to join the association and pledge his credit.

A careful reading of the record, including the charge, has convinced me that plaintiff's objections to the charge

are met by the apparent assumptions indulged by the
court, and by the very pointed instruction relating to de-
fendant's liability if a secret agreement existed between de-
fendant and the vendor.   It is true, as appellant contends,
that the court did not state or point out what representa-
tions about the horse were, if made, important and con-
trolling, and did not instruct that one material false rep-
resentation, if made and relied upon, was, or might be,
sufficient to justify a verdict.   But, as has been said, the
charge assumes that all of the alleged representations
were made and were false—an assumption which was
wholly unwarranted if the jury believed the testimony of
defendant and his witnesses.   In my opinion, the verdict
should not be disturbed for any error in the charge, nor
at all if improper testimony was not admitted.

With respect to the alleged objectionable testimony, it
is said that the issue was what was this stallion worth in
March, 1903, and that testimony of his subsequent history
and of the number and value of his foals was improperly
admitted.   The testimony, so far as it is contained in the
record, is conclusive and quite agreeable with reason that
the real value of a young breeding horse is a fact to be
determined by his performances, and that his apparent
value is determined by his individual excellence, his breed-
ing, and promise.   It is claimed that defendant repre-
sented as a fact within his own knowledge that the horse
was a sure foal-getter.   It does not appear how defend-
ant could have had any such knowledge; but, aside from
this, defendant undertook to prove that, whether what he
said was mere opinion, or was a statement of fact, the
statement was in fact true.   In view of plaintiff's allega-
tions and position, he had the right to prove it if he could.
How ?   Necessarily by proving that he got foals, and as
many, the number of attempts considered, as other good
horses.   Further, that the foals lived, were strong, and
came to maturity, and were of such excellence that there
was a market for them, in which they were sold at good

prices.   It is evident that time alone will demonstrate the value of such an animal for the purposes for which he was sold, and that it was not error to receive the testimony which tended to prove that this horse showed by performance that he was a sure foal-getter and good breeder. The testimony tended to prove, also, that the venture was one calculated to be, and which might have been made, profitable to the adventurers.

The judgment, upon the whole record, ought not to be disturbed, and is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, and STONE, JJ., concurred.   BIRD, J., did not sit.